**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

BARBARA D. FORDHAM and          )
LAWRENCE J. FORDHAM,            )
                                )
          Plaintiffs,           )
                                )
          v.                    )     No. 07 C 0568
                                )
H.J. CHOI, M.D.,                )
                                )
          Defendant.            )


<u>**MEMORANDUM OPINION**</u>

Before the court is defendant's motion for partial summary judgment.  We deny defendant's motion for the reasons explained below.

<u>**BACKGROUND**</u>

Plaintiff Barbara Fordham was diagnosed with stage 2B cervical cancer in 2003.  (Pl. Local Rule 56.1(a) Stmt. of Material Facts (hereinafter "Pl. Stmt."), ¶ 50.)  This diversity case arises from a series of pap smears pre-dating her diagnosis that Fordham claims the defendant, H.J. Choi, negligently misread as "negative" or within "normal limits."  Fordham's gynecologist sent Fordham's pap-smear slides to Mendota Community Hospital, and Choi reviewed them pursuant to a series of contracts with the hospital.  (Def. Local Rule 56.1 Stmt. of Material Facts (hereinafter "Def.Stmt."), ¶ 18; <u>see also</u> Choi. Dep. at 24-20.)  Choi, who never met Fordham or

reviewed her medical records, did not otherwise participate in Fordham's medical care. (Def. Stmt. ¶¶ 11-12.) Dorothy Rosenthal, plaintiff's expert pathologist, testified at her deposition that Choi's pap-smear interpretations fell below the standard of care in November 1990, November 1991, May 1994, June 1996, June 1997, March 2000, August 2001 and August 2002. (Pl. Stmt. ¶¶ 14, 19, 20, 27-29, 35, 37.)[1] Choi also read Fordham's pap-smear slides in May 1995 and January 1999. (Id. at ¶¶ 6-7.) With respect to the 1995 pap-smear, Rosenthal testified that the slides contained insufficient endocervical material to identify a "high grade squamous in epithelial lesion." (Rosenthal Dep. at 97.) In Rosenthal's opinion, Choi should have indicated that the slides were deficient — there was even a "space on her form for her to check it off." (Id. at 96.) Moreover, Choi failed to recognize the "abnormal cells" that *were* on the slides. (Id. at 97-100.)[2]

---

[1]   In 2003, after her regular gynecologist discontinued her practice, Fordham began seeing a different gynecologist. (Pl. Stmt. ¶ 47.) Fordham's new gynecologist relied on a different pathologist for pap-smear interpretations, and that pathologist read Fordham's pap-smear as "abnormal." (Id. at ¶¶ 47-48.)

[2]   Prior to her deposition, and before drafting her expert report, Rosenthal created a chart summarizing her conclusions on which she placed a question mark for the May 1995 pap-smear. (Rosenthal Dep. at 42.) Choi interprets this to mean that Rosenthal "did not know" whether Choi's interpretation fell below the standard of care. (Def. Stmt. ¶ 7.) This statement is, at best, incomplete in light of Rosenthal's testimony that Choi's interpretation *did* fall below the standard of care because she did not identify abnormal cells on the 1995 slides. (Rosenthal Dep. at 97.) Choi admits as much in response to plaintiff's statement of facts. (Def. Resp. to Pl.'s Stmt. ¶ 27.) Fordham should have, but did not, file a response to defendant's statement of facts, but we will not deem her to admit a "fact" that is clearly not supported by the record. See Williams v. Cano, No. 06-C-6065, 2008 WL 4367417, *2 (N.D. Ill. Mar. 27, 2008) ("While it is within the court's discretion to strictly apply the requirements of Local Rule 56.1, it is also within the court's discretion not to apply them strictly or literally.").

Choi's interpretation of the January 1999 pap-smear, which
Rosenthal described as Choi's "least egregious," also failed to
note that the slide contained "inadequate endocervical component."
(Id. at 107-08.) Rosenthal's testimony about the 1999 pap-smear is
disjointed, but she ultimately concluded that, in this instance,
Choi's conduct did not fall below the standard of care:

> A. She should have said no endocervical component.
> It's a question at the component of her report
> [sic]. *It was the standard in those days, in '99,*
> *to indicate whether a slide had an endocervical*
> *component or not.* It did not disqualify a slide
> from being satisfactory, but it should be noted so
> the clinician knows in following the patient
> whether an endocervical component has been
> obtained.
>
> Q. And is there some endovervical on this '99 slide?
>
> A. One group. Maybe. I'm not sure.
>
> Q. Okay. Is — if I understand you correctly, Dr.
> Choi's lack of reporting the inadequate
> endocervical component, while you would have liked
> to have seen it there, did not fall below the
> standard of care?
>
> A. *I'll give it.*
>
> Q. Thank you.
>
> A. You are welcome.

(Rosenthal Dep. at 107-08 (emphasis added).) Later in the
deposition, in response to a hypothetical question posed by
Fordham's counsel, Rosenthal indicated that Choi would have
breached the standard of care if she had known that Fordham had
previously tested positive for abnormal cells but failed to note

that a subsequent slide lacked endocervical component. (Id. at 130.) Fordham argues in her opposition to defendant's motion that Rosenthal's testimony creates a material issue of fact concerning the 1999 pap smear because Choi should have concluded that the slides from previous years were abnormal. (Pl. Opp'n at 16.) But Rosenthal specifically testified that counsel's hypothetical did not change her opinion that Choi had not breached the standard of care with respect to the January 1999 slides. (Id. at 130-31.)

## DISCUSSION

### A. Legal Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. See Pitasi v. Gartner Group, Inc., 184 F.3d 709, 714 (7th Cir. 1999). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Talanda v. KFC Nat'l Mgmt. Co., 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court will enter summary judgment against a party who does not "come forward with evidence

that would reasonably permit the finder of fact to find in [its] favor on a material question." McGrath v. Gillis, 44 F.3d 567, 569 (7th Cir. 1995).

**B.   The Statute of Repose and the Continuous Course of Negligent Treatment Doctrine**

Choi has moved for partial summary judgment on the ground that any claims based on Choi's conduct before June 2000 are time-barred.   Illinois has adopted a four-year statute of repose limiting malpractice actions against licensed physicians:

> Except as provided in Section 13-215 of this Act, no action for damages for injury or death against any physician, dentist, registered nurse or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action, whichever such date occurs first, but in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death.

735 ILCS 5/13-212(a).  The Illinois "legislature enacted this four-year outer limit on malpractice liability specifically to curtail the 'long tail' exposure to medical malpractice claims brought about by" the discovery rule, pursuant to which the statute of limitations is not triggered until the plaintiff discovers his or her injury.  Cunningham v. Huffman, 609 N.E.2d 321, 325 (Ill. 1993).  The statute of repose, by contrast, is triggered by the

act, omission or "occurrence" giving rise to the injury, irrespective of when the plaintiff discovered that he or she was injured. In <u>Cunningham</u>, the Illinois Supreme Court concluded that the term "occurrence" encompasses, or at least permits a "cause of action" predicated upon, a series of related negligent acts or omissions constituting one continuing wrong. 609 N.E.2d at 325. "To prevail on this cause of action a plaintiff must demonstrate: (1) that there was a continuous and unbroken course of negligent treatment, and (2) that the treatment was so related as to constitute one continuing wrong." <u>Id.</u> Choi argues that the undisputed facts do not support either element, but to determine whether she is entitled to summary judgment we must first discuss the genesis of the rule in <u>Cunningham</u>.

The plaintiff in <u>Cunningham</u> alleged that she received negligent treatment from several doctors, all of whom were members of the Carle Clinic Association. <u>Id.</u> at 322-23. Plaintiff's medical problems began after one of the defendant doctors inserted an intrauterine device ("IUD") in plaintiff. <u>Id.</u> at 322. Thereafter, a series of Carle-affiliated doctors failed to pinpoint or correct the problem. <u>Id.</u> at 322-23. Only after the plaintiff went to a doctor outside of Carle's practice was the problem finally identified and corrected. <u>Id.</u> at 323. By that time, more than ten years had elapsed since the original IUD — the first of two, only one of which was removed by a Carle-affiliated doctor —

was inserted. Id. Plaintiff sued Carle and three of its doctors for malpractice, two of whom were voluntarily dismissed. Id. The trial court then concluded that the plaintiff's claims against Carle and the remaining doctor were time-barred. Id. In reaching that conclusion, the court declined to toll the statute of repose pursuant to the "continuous course of treatment doctrine," which had been adopted in other jurisdictions. Id. (The continuous course of treatment doctrine tolls the running of the statute of repose "until the end of the patient/physician relationship, so long as there has been continuous treatment — whether negligent or not — for a condition occasioned by a prior negligent act."). The appeals court reversed, concluding that, as to Carle, the statute of repose was triggered only on the last day of treatment and that plaintiff ought to be permitted to amend her complaint consistent with that theory.[3] Id. at 324.

The Illinois Supreme Court affirmed, but rejected the continuous course of treatment doctrine. The court assumed that the Illinois General Assembly was aware that other states had codified that doctrine and that it had intentionally declined to follow suit. Id. But this did rule out a cause of action based upon a continuous course of *negligent* treatment. Id. The court concluded that the word "occurrence" in the statute of repose, when

_____

[3] The plaintiff conceded that her claims against the remaining individual doctor were time-barred even under a continuous-treatment theory. Cunningham, 609 N.E.2d at 327 (Miller, C.J., dissenting).

read in context, was not "limited to a single event." <u>Id.</u> at 325.

If multiple negligent acts spanning more than four years compounded

the plaintiff's injury, it would be "unjust" to limit the

plaintiff's damages to those acts occurring in the final four

years:

> Further, to so narrowly construe this phrase could lead
> to absurd and unjust results. For example, if the word
> occurrence were interpreted to mean a single isolated
> event, patients who discovered that they were gravely
> injured due to negligent or unnecessary exposure to X-ray
> radiation or administration of medication over a span of
> years might be able to recover little, if any, in the way
> of damages. This would be so because a single dosage of
> radiation or medicine might be harmless, whereas
> treatment over time might be either disabling or even
> fatal. When the cumulative results of continued
> negligence is the cause of the injury, the statute of
> repose cannot start to run until the last date of
> negligent treatment. If the statute of repose were read
> to start on day one of the treatment in a span covering
> many years, a plaintiff could only seek recovery for the
> final four years. It is conceivable that the damage
> caused in the last four years might be either negligible
> or a small fraction of the harm caused over the continuum
> of negligence; thus, the recovery of damages would be
> negligible compared to the actual injury. Surely, the law
> could not contemplate such an unjust result.

<u>Id.</u> The above hypothetical could be read to suggest, by negative

implication, that the doctrine does not apply if the particular

acts or omissions alleged to constitute the continuous negligent

treatment could themselves support separate causes of action. <u>See,</u>

<u>e.g.</u>, <u>Rodrique v. Olin Employees Credit Union</u>, 406 F.3d 434 (7th

Cir. 2005) (rejecting a continuous tort theory predicated on a

series of embezzled checks). But as the <u>Cunningham</u> dissent pointed

out, that requirement probably would not be satisfied by the facts alleged in <u>Cunningham</u> itself. <u>See</u> <u>Cunningham</u>, 609 N.E.2d at 327-28 (Miller, C.J., dissenting) (suggesting that "each failure to render a correct diagnosis could support a separate cause of action."). The question, then, is not whether the plaintiff could conceivably have filed a lawsuit predicated on one instance of negligence, but whether such a lawsuit would adequately address the cumulative harm that the defendant's negligence caused. <u>Cf.</u> <u>Rodrigue</u>, 406 F.3d at 443 ("There is, for example, no question as to whether, when, *and to what degree* Rodgrique was harmed — the dates on which Olin improperly accepted the checks, and the amounts of those checks, make such determinations straightforward.") (emphasis added). Bearing in mind that we must "resolve this matter how we think the Illinois Supreme Court would," <u>Baltzell v. R & R Trucking Co.</u>, — F.3d —, 2009 WL 249981, *4 (7th Cir. Feb. 4, 2009), we address below whether plaintiff's claims for conduct prior to June 2000 are time-barred.

      *1. Whether Choi's treatment was "continuous" and "so related as to constitute one continuing wrong."*

Defendant argues that her treatment was "at best a series of discreet [sic] 'encounters,' not with Ms. Fordham, but with Ms. Fordham's pap smear slides." Defendant points out that there is no evidence that, as she reviewed each group of slides, she was aware that she had previously reviewed slides for this same patient in

previous years.[4]  (Def. Reply at 6.)  And it is undisputed that
Choi "never" reviewed Fordham's "medical records."  (Def. Stmt. ¶
12.)  Because each group of slides was interpreted in a "vacuum,"
Choi argues that her services were not continuous and interrelated.
This argument finds more support in the <u>Cunningham</u> dissent than it
does in the majority's opinion.  <u>See</u> <u>Cunningham</u>, 609 N.E.2d at 328
(Miller, C.J., dissenting) ("Unlike a continuing regime of
negligent treatment, the acts complained of in the present case
more closely resemble discrete wrongs, and each failure to render
a correct diagnosis could support a separate cause of action.").
The <u>Cunningham</u> majority focused on the plaintiff's medical
condition and the defendant's failure to diagnose its cause, not on
the relationship between "treatments," which were administered by
different doctors at irregular intervals.[5]  Here, Choi was
screening Fordham's pap-smear slides for evidence of cervical
cancer and, according to plaintiff's expert, she repeatedly missed
clear indications of the same condition.  (Pl. Stmt. ¶¶ 21-23, 42-
43.)  Choi argues that she did not know that it was the same
patient and the same condition, but we are not persuaded that
continuity, for purposes of the continuous course of negligent

_____

[4]  Choi's knowledge at the time she reviewed Fordham's pap-smear slides
was not explored at her deposition.

[5]  Indeed, it appears from the court's opinion that in the final seven
years before the plaintiff filed suit Carle's alleged negligence consisted
primarily, and perhaps exclusively, in failing to identify the embedded IUD as
the source of her medical problems.  <u>Cunningham</u>, 609 N.E.2d at 322-23.

treatment doctrine, depends on the physician's knowledge. Choi
also emphasizes the amount of time that elapsed between one
allegedly negligent interpretation and another, as long as two and
a half years in one instance. Cf. Flynn v. Szwed, 586 N.E.2d 539,
545-46 (Ill. App. 1991) (pre-Cunningham case in which the court
concluded that the defendant's intermittent treatment of different
conditions did not toll the statute of limitations). But the
intervals between treatments in Cunningham were as long, if not
longer. See Cunningham, 609 N.E.2d at 322-23. Moreover, it
appears that the amount of time that elapsed between pap-smear
samples was a function of the kind of care that Choi was providing:
pap-smear interpretations incident to routine gynecological
examinations. In these types of cases, significant amounts of time
will necessarily elapse between screenings.[6] Viewing the evidence
in the light most favorable to Fordham, a reasonable jury could
conclude that Choi's treatment was continuous and interrelated.

    2.  *Whether Choi's conduct was continuously negligent.*

    Choi argues that the alleged her course of treatment was not
continuously negligent because plaintiff's expert concluded that
Choi's interpretation of the January 1999 pap-smear did not fall
below the standard of care. Cunningham does not address the effect
of a single non-negligent act in a series of negligent acts or

---

[6] (See Fordham Dep. at 40 ("Q. Did you ever discuss the pap smear slide
results with Dr. Salvini [Fordham's gynecologist]? A. No. She never discussed
them with me. I just got a thing in the mail, a card that said negative, you
know, come back another year, and that was it.").)

omissions, although there is some support for the defendant's position in the court's opinion.  See id. at 325 ("'[O]ccurrence' . . . necessarily only encompasses the continuum where the physician was negligent").  On the other hand, Choi's argument is inconsistent with other language in the opinion and with the court's underlying rationale.  The Illinois Supreme Court adopted the continuous course of negligent treatment doctrine to address the "cumulative results of continued negligence," for which there might be no adequate remedy if the repose period was triggered in every case by a "single event." Id.  Rosenthal gave Choi a "pass" for failing to note the lack of endocervical material on the January 1999 slides, but Choi's "non-negligence" did nothing to alleviate the harm caused by her prior negligence.  By itself, this would not be grounds to continue tolling the statute of repose. See id. at 325 (indicating that the repose period begins running on the last day of negligent treatment whether or not the patient (or the physician) has discovered the patient's injury).  But Choi's negligent treatment resumed, further delaying the correct diagnosis beyond the stage where surgery was a treatment option. See, e.g., Willis v. Khatkhate, 869 N.E.2d 222, 227 (Ill. App. 2007) (defendants not entitled to summary judgment where their treatment of the decedent, based upon an allegedly negligent misdiagnosis, was interrupted by a period of treatment by different doctors at a different hospital.).  By the time that her cancer was diagnosed,

Fordham no choice but to undergo a course of radiation and chemotherapy. This is the core of her claim for damages. <u>See Cunningham</u>, 609 N.E.2d at 325 ("It is conceivable that the damage caused in the last four years might be either negligible or a small fraction of the harm caused over the continuum of negligence; thus, the recovery of damages would be negligible compared to the actual injury. Surely, the law could not contemplate such an unjust result."). We believe the Illinois Supreme Court would conclude under these circumstances that the entire course of negligent treatment — notwithstanding one non-negligent act — tolled the statute of repose. <u>Id.</u> ("When the cumulative results of continued negligence is the cause of the injury, the statute of repose cannot start to run until the last date of negligent treatment."). Viewing the evidence in the light most favorable to plaintiff, the last date of negligent treatment was March 2002 and plaintiff's claims are timely.

## CONCLUSION

Defendant's motion for partial summary judgment (36) is denied.


DATE:          February 12, 2009


ENTER:         _____

               John F. Grady, United States District Judge